# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| NEW DIRT, LLC, a limited liability company<br><br>    Plaintiff,<br><br>vs.<br><br>CROSS BASE, LLC, a Washington limited liability company; STEVEN LAUKAITIS, an individual; NORMAN FERGUSON, an individual; KAREN M. SLADEK-FERGUSON, an individual; and MARIANN TONDER, aka MARIANN LAUKAITIS and MARIANN TONDER LAUKAITIS, an individual<br><br>    Defendants. | Civil No. 4:12-cv-00223-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**DEFENDANTS' RENEWED MOTION TO DISMISS**<br>**(Docket No. 35)** |

Pending before the Court is Defendants' Renewed Motion to Dismiss (Docket No. 35). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]

1.      On or around December 22, 2006, Cross Base, LLC ("Cross Base") (a Washington limited liability company) executed a Promissory Note ("Note") in favor of ANB Financial, N.A. ("ANB Financial") (a Wyoming bank) for the principal balance of $1,628,688.00.  *See* Compl., ¶¶ 2 & 9 (Docket No. 1, Att. 1).

2.      The Note was secured by a Real Estate Deed of Trust, executed by Cross Base on or around December 22, 2006, and recorded in Teton County, Idaho on December 28, 2006.  *See*

---

[1]  For the purposes of Defendants' Motion to Dismiss only, this section reflects the Court's acceptance as true, the allegations raised within Plaintiff's Complaint.  *See infra.*

**MEMORANDUM DECISION AND ORDER - 1**

*id*. at ¶ 10.  The real property ("Property") referenced within the Real Estate Deed is also located in Teton County, Idaho.  *See id.*

      3.      According to the terms of the Note, Cross Base was obligated to pay the entire principal and interest on or before December 22, 2007.  *See id*. at ¶ 11.

      4.      On December 22, 2006, certain individuals, including Norman Ferguson and Karen M. Sladek-Ferguson ("Fergusons" or "Defendants") (as well as Steven Laukaitis and Mariann Tonder), each executed a Guaranty that unconditionally guaranteed the payment of the amounts to be loaned by ANB Financial to Cross Base.  *See id*. at ¶ 12.  The Fergusons, Steven Laukaitis, and Mariann Tonder are Washington residents.  *See id*. at ¶¶ 4-7.

      5.      Pursuant to the terms of the Note, and in consideration of the Real Estate Deed of Trust and Guaranties, ANB Financial released funds to Cross Base in the amount of $1,628,688.00 for the benefit of Cross Base.  *See id*. at ¶ 13.

      6.      Cross Base defaulted on the Note and Real Estate Deed of Trust by failing to pay the Note when due on December 22, 2007.  *See id*. at ¶ 17.  As a result, non-judicial foreclosure proceedings under the Real Estate Deed of Trust were eventually commenced.  *See id.*

      7.      On or around May 9, 2008, ANB Financial was closed and taken over by the Federal Deposit Insurance Corporation ("FDIC").  *See id*. at ¶ 15.  The FDIC, as receiver for ANB Financial, then assigned the Note, the Real Estate Deed of Trust, and the Guaranties to Plaintiff ANB Venture, LLC. ("ANB Venture")[2] in January 2009.  *See id*. at ¶ 16.

---

    [2]  On March 22, 2013, ANB Venture filed a Motion for Substitution of Party, requesting that New Dirt, LLC ("New Dirt") be substituted in for ANB Venture as the Plaintiff in this action.  *See* 3/22/13 Mot. to Sub. (Docket No. 40).  On April 3, 2013, this Court entered an Order substituting in New Dirt for ANB Venture as the Plaintiff in this action.  *See* 4/3/13 Order (Docket No. 41).

**MEMORANDUM DECISION AND ORDER - 2**

8.      ANB Venture caused the Property to be sold at a Trustee's Sale held December 13, 2011.  *See id.* at ¶ 18.

9.      ANB Venture successfully purchased the Property at the Trustee's Sale by a credit bid of $390,000.00.  *See id.* at ¶ 19.

10.     Through this action, ANB Venture, brings the following claims to recover the amounts owing to it: (1) "Deficiency Claim" against Cross Base (First Claim for Relief); (2) Unjust Enrichment against Cross Claim (Second Claim for Relief); and (3) "Claim on the Guaranty" against the Fergusons, Steven Laukaitis, and Mariann Tonder (Third Claim for Relief).  *See id.* at ¶¶ 20-34.

11.     On January 18, 2013, the Fergusons brought the at-issue Motion to Dismiss, arguing that this Court "does not have personal jurisdiction over [them] as they are residents of the state of Washington and have not availed themselves to the state of Idaho, nor have they had the requisite "minimum contacts" with the state."  *See* Brief in Supp. of Mot. to Dismiss, p. 2 (Docket No. 35).

12.     On June 3, 2013, New Dirt entered into a Stipulation for Dismissal with Prejudice with Cross Base, Steven Laukaitis, and Mariann Tonder.  *See* 6/3/13 Stip. (Docket No. 47).  On June 18, 2013, this Court entered an Order dismissing Cross Base, Steven Laukaitis, and Mariann Tonder from the action.  *See* 6/18/13 Order (Docket No. 50).  Therefore, the only claim remaining in this action (and subject to the Fergusons's Motion to Dismiss) is New Dirt's "Claim on the Guaranty" against the Fergusons (Third Claim for Relief).

## II.  DISCUSSION

In response to a motion to dismiss under FRCP 12(b)(2), the plaintiff bears the burden of proving that federal jurisdiction, in this court, is appropriate.  *See Dole Food Co., Inc. v. Watts*,

**MEMORANDUM DECISION AND ORDER - 3**

303 F.3d 1104, 1108 (9th Cir. 2002).  The Court must take the plaintiff's uncontroverted

allegations as true and conflicts between the parties over statements in affidavits are resolved in

the plaintiff's favor.  *See id.*

There is no applicable federal statute governing personal jurisdiction.  Rather, the law of

the state in which the federal district court sits applies.  *See Schwarzenegger v. Fred Martin

Motor Co.*, 374 F.3d 797, 800 (9th Cir. 1990).  Generally, because Idaho's long-arm statute

(Idaho Code § 5-514) allows a broader application of personal jurisdiction than the Due Process

Clause, the Court need look only to the Due Process Clause to determine personal jurisdiction.

*See Wells Cargo, Inc. v. Transp. Ins. Co.*, 676 F. Supp. 2d 1114, 1119 (D. Idaho 2009).[3]

However, when Idaho's long-arm statute precludes jurisdiction in the first instance, there is

logically no need to further consider Constitutional standards; said another way, due process

considerations are not necessary, absent preliminary satisfaction of Idaho's long-arm statute.

---

[3]   In *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987), the Ninth Circuit determined
that the Idaho legislature, in adopting Idaho Code § 5-514, "intended to exercise all the
jurisdiction available to the [s]tate of Idaho under the Due Process Clause of the United States
Constitution."  *Lake*, 817 F.2d at 1420.  The Idaho Supreme Court had so held, and continued to
so hold for a few years after the *Lake* decision was rendered.  *See Houghland Farms v. Johnson*,
119 Idaho 72, 803 P.2d 978 (Idaho 1990).  More recently, however, the Idaho Supreme Court,
without commenting on its prior decision in *Lake*, adopted a two-part test for resolving long-arm
jurisdiction questions.  The Court first looks at whether the defendant's conduct falls within the
terms of the statute, and then looks to see whether exercising jurisdiction would comport with
the Due Process Clause.  In at least two reported cases, the Idaho Supreme Court has held that
the defendant's conduct did fall within Idaho Code § 5-514, but that jurisdiction could not be
exercised consistently with the Due Process Clause.  *See e.g.*, *Smalley v. Kaiser*, 950 P.2d 1248
(Idaho 1997); *Saint Alphonsus v. State of Washington*, 852 P.2d 491 (Idaho 1993).  These
decisions imply that Idaho Code § 5-514 reaches beyond the limits of due process, and that the
Idaho Supreme Court must use the Due Process Clause to rein in the statute's grasp.  The result,
however, is the same -- the Due Process Clause sets the limit, but the Idaho Supreme Court's new
two-part test recognizes that the reach of the statute is not identical to the reach of the Due
Process Clause.

**MEMORANDUM DECISION AND ORDER - 4**

Idaho Code § 5-514 enumerates the acts which subject a person to extraterritorial jurisdiction in Idaho.  *See St. Alphonsus Regl. Med. Ctr. v. Wash.*, 852 P.2d 491, 494 (1993).  It provides, in pertinent part:

> Any person, firm company, association or corporation, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, form, company, association or corporation, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:
>
> > (a)    The transaction of any business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance business purpose or objective or any part thereof of such person, firm, company, association or corporation; . . . .

I.C. § 5-514(a).[4]  Through their Motion to Dismiss, Defendants argue that, consistent with *Mann v. Coonrod*, 870 P.2d 1316 (Idaho 1994), their alleged conduct is not sufficient evidence of transacting business within the state of Idaho to establish personal jurisdiction under Idaho's long-arm statute.  *See* Brief in Supp. of Mot. to Dismiss, pp. 6-7 (Docket No. 35).  The undersigned agrees.

In *Mann*, the defendant Utah corporation High Country Meats, Inc. ("High Country") entered into a contract with the Idaho plaintiffs Kent Mann and Charles Mann, dba M & M Feedlot (collectively "Mann") for the purchase of 62 veal calves, which High County was to pick up at M & M Feedlot in Parma, Idaho.  *Mann*, 870 P.2d at 1317.  Pursuant to the parties' agreement, Mann initially turned over four of the calves to High Country.  However, because

---

[4]  To be sure, Plaintiff's state-court Complaint acknowledges that "[t]his Court has jurisdiction over all Defendants pursuant to Idaho Code § 5-514 in that said Defendants transacted business in the state of Idaho."  *See* Compl., ¶ 8 (Docket No. 1, Att. 1).

**MEMORANDUM DECISION AND ORDER - 5**

High Country was slow in making payment for those calves, Mann wanted payment guaranteed before the remaining calves were conveyed.  *Id*.  Thereafter, High Country's president and shareholder, Wells Cannon ("Cannon") (a Utah resident) initiated a three-way conference call from Utah with (1) Mann in Idaho, and (2) another defendant and High Country shareholder, Richard A. Coonrod ("Coonrod") (a Minnesota resident), in Minnesota.  *Id*.  Mann said that during the telephone conversation, Coonrod promised to personally guarantee payment for any additional calves sold to High Country.  *Id*.  Mann claimed that, based on that telephone conversation, he released the additional calves to High Country.  *Id*.

High Country made payment on the sale of the calves in the amount of $9,000.00. Mann, however, asserted that $19,846.00, plus interest, was still due and owing on the sale, and Mann filed suit against High Country and Coonrod, individually, in Idaho state court.  *Id*.  Relevant to this action here, Coonrod filed a motion to dismiss, alleging that the state district court lacked personal jurisdiction over him.  *Id*.

After construing the evidence most favorably for Mann, the district court denied Coonrod's motion to dismiss, finding that it had personal jurisdiction over Coonrod based upon allegations that (1) Coonrod guaranteed the sales contract; (2) the contract was entered into over the telephone with an Idaho participant; and (3) the guarantee was of a sales contract to be performed in Idaho.  *Id*.  Following trial, judgment was entered for Mann against High Country and Coonrod, jointly and severally.  *Id*.  Coonrod appealed, arguing that the district court erred in exercising personal jurisdiction over him under Idaho's long-arm statute.  *Id*.

On appeal, the Idaho Supreme Court set the issue thusly:

Coonrod is being sued individually and thus we must examine his activities independently of those of High Country to determine if he was personally transacting

**MEMORANDUM DECISION AND ORDER - 6**

> business within Idaho for the purposes of the long-arm statute.  While his acts may have been done to benefit the business in which he has an interest, it is nevertheless his actions with which we are concerned and not those of High Country.

*Id*.  The Idaho Supreme Court went on to analyze the sufficiency of Coonrod's contacts (as opposed to those of High Country's) to determine whether personal jurisdiction existed:

> Based upon the affidavits presented on the motion to dismiss we cannot say Coonrod transacted business within the state of Idaho within the meaning of the long-arm statute.  The facts as alleged in Kent Mann's affidavit demonstrate only that Cannon and Coonrod were in daily contact regarding the operation of High County; that Coonrod was involved in the financial decisions of High County; and that Coonrod stated during a telephone call to him in Minnesota, what was initiated by Cannon in Utah, that he would guarantee payment for the calves.  Therefore, the only actions alleged by Mann that would indicate Coonrod transacted business in Idaho are the telephone call and the fact that Mann is located in Idaho.  *We cannot say Coonrod transacted business in Idaho based upon a telephone call which he did not even initiate.  Likewise, we cannot say Coonrod transacted business in Idaho due to the mere fact that Mann is located in Idaho.*  Nowhere do we find allegations supporting an inference that Coonrod was acting "for the purpose of realizing pecuniary benefit" or that he was "attempting to accomplish, transact or enhance" his own business purposes.  Based upon the record before us there is simply no evidence that Coonrod entered into a transaction of business within the state of Idaho.  These facts were not a sufficient basis upon which the district court could assert jurisdiction.

*Id*. at 1319 (emphasis added).[5]

Here, based on Idaho Supreme Court precedent and the factual allegations of the parties construed in a light most favorable to New Dirt/ANB Venture, the undersigned concludes that it cannot exercise personal jurisdiction over the Fergusons, and that their Motion to Dismiss should

---

[5]  In *Knutsen v. Cloud*, 124 P.3d 1024 (Idaho 2005), the Idaho Supreme Court further defined its view of the long-arm statute:

> The plain language of our long-arm statute does not permit a court to exercise personal jurisdiction over the agent of a company who lacks sufficient contacts with Idaho, even if the principal is subject to jurisdiction through the actions of other agents.  Our long-arm statute works only in the reverse, allowing a court to exercise personal jurisdiction over a principal when its agent has sufficient contacts with Idaho.

*Id*. at 1027.

**MEMORANDUM DECISION AND ORDER - 7**

be granted.  The Fergusons' involvement in the instant dispute was limited to their alleged

personal Guaranties of Cross Base's loan obtained from ANB Financial – nothing more.[6]

Simply put, New Dirt/ANB Venture has not made a prima facie showing (indeed, their briefing

does not  directly speak to *Mann*) that the Fergusons took any action in, or aimed at, the state of

Idaho such that this Court's exercise of personal jurisdiction over them in an *individual* capacity

would satisfy either Idaho's long-arm statute or the Due Process Clause.  As in *Mann*, the

Fergusons' respective Guaranties of Cross Base's payments to ANB Venture (even if ANB

Venture's loan was for the purpose of purchasing property in Idaho) are not the equivalent of

their *individually* transacting business in Idaho under the standards of Idaho Code § 5-514(a).[7]

---

[6]  The Fergusons' relationship with Idaho is even more attenuated than was Coonrod's relationship with Idaho in the *Mann* case.  While both the Fergusons and Coonrod allegedly guaranteed certain payments on behalf of their associated business entities' contracts relating to Idaho, Coonrod's Guaranty came about in a telephone call which involved Coonrod and Idaho residents, relating to a contract between a Utah company and an Idaho company.  In contrast, the Fergusons entered into their Guarantees while situated in Washington, not Idaho; moreover, the Guaranties themselves reference Wyoming as the state where the Guaranties were executed, not Idaho.  *See* Ex. C to Compl. (Docket No. 1, Att. 1).  Under the holding in *Mann*, such conduct is simply not enough for this Court to exercise personal jurisdiction over the Fergusons.  *Compare with Wachovia Trust Co. v. Amin*, 2005 WL 1593648, *4 (D. Idaho 2005) (distinguishing *Mann* because "Defendant's activities in the instant case  . . . are more substantive than a single telephone call.  Defendant sent numerous documents and other required information to ACFI's Idaho office in the course of several months, including her personal financial information, in order to secure the loan.  Furthermore, whereas the defendant in *Mann* did not initiate the contact which gave rise to his guarantee, Defendant in this case not only initiated contact with ACFI by submitting the loan application, but also continued to communicate with the Idaho corporation during the negotiation process and signed several loan documents, including the personal guaranty, containing Idaho choice-of-law provisions.  All of these documents were sent to the Boise office and all ACFI's duties regarding the loan process were executed from that office.").

[7]  The exercise of personal jurisdiction over a defendant comports with federal due process if the defendant "has certain minimum contacts with the relevant forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th

**MEMORANDUM DECISION AND ORDER - 8**

Accordingly, New Dirt's "Claim on the Guaranty" against the Fergusons (Third Claim for Relief) is dismissed without prejudice to New Dirt bringing such a claim in a court of proper jurisdiction and venue.

### III. ORDER

Based upon the foregoing, IT IS HEREBY ORDERED that Defendants' Renewed Motion to Dismiss (Docket No. 35) is GRANTED and that New Dirt's "Claim on the Guaranty" against the Defendants (Third Claim for Relief) is dismissed without prejudice to New Dirt bringing such a claim in a court of proper jurisdiction and venue.  By virtue of such a ruling, Defendants' pending "Complaints and Motion to Compel Protection and Dismissal" (Docket No. 42) is DENIED as moot.  The Clerk of the Court is directed to close this case.

DATED:  **September 9, 2013**

Honorable Ronald E. Bush
U. S. Magistrate Judge

---

Cir. 2006).  Because the Fergusons did not transact any business in Idaho pursuant to *Mann*, they cannot have the requisite minimum contacts to subject them to personal jurisdiction under the Due Process Clause.

**MEMORANDUM DECISION AND ORDER - 9**